# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

United States of America,

        Plaintiff

v.

Joshua Sadat Washington, et al.,

        Defendants

Case No.: 2:16-cr-00279-JAD-PAL

**Order Denying Motion for New Trial, Motion for Second Continuance of Sentencing Hearing, and Other Relief**

[ECF Nos. 228, 253, 254, 256, 257, 271, 275]

     Defendant Joshua Sadat Washington was convicted of interference with commerce by robbery, brandishing a firearm in furtherance of a crime of violence, and transportation of stolen property after a jury found him guilty of the armed take-down robbery of a local jewelry store.[1] Washington invoked his right to represent himself. He conceded at trial that "wrong was done"[2] and he was "[n]ot tryin' to weasel . . . up outta this," and his defense theory was that he believed law enforcement was tailing him before UPS happened upon the box of stolen jewelry that he shipped to himself in Florida, so the warrantless private search by UPS that led to all the evidence and his arrest was actually government directed and illegal.[3]

     Washington moves for a judgment of acquittal or a new trial.[4] He argues that the trial testimony of defense witness Maria Chiang-Lopez, one of the employees at the UPS store whence he shipped the package of stolen jewelry to his mother's address in Florida, proves that law enforcement intercepted the package long before it got to Florida, so the search was not private. And because all evidence against him derived from that search, it should have been

---

[1] ECF No. 225.

[2] ECF No. 265 (official transcript of Washington's opening statement) at 7.

[3] *Id*. at 8.

[4] ECF No. 228.

excluded as the fruit of the poisonous tree.[5]  The government opposes the motion and contends that the court properly denied Washington's motion to suppress before trial and that nothing that happened at trial undermined that ruling.[6]  I agree, so I deny Washington's motion for a judgment of acquittal or a new trial, and I resolve all other pending motions.

## Background

### A.    The Alfredo's Jewelry Store Robbery

Alfredo's Jewelry Store, a local, mom-and-pop store that sells and repairs jewelry in Las Vegas, Nevada, was pillaged during a violent armed robbery on August 13, 2016.  As two long-time female employees were preparing to open the store that morning by opening the safes and loading merchandise into the glass cases, two men gained entry by posing as Fed Ex delivery men.  They pulled out a gun, zip ties, and trash bags; ordered the women to the floor at gunpoint, and bound their hands behind their backs; and kicked one of the women in the face and dragged her by her hair.  They threatened to kill the women, who pleaded for their lives.[7]  In just minutes, the heist had netted more than $470,000 in cash, merchandise, and customers' own jewelry entrusted to Alfredo's for repair.[8]

---

[5] ECF Nos. 228 (motion); 230 (supplement 1); 232 (supplement 2 entitled "Defendant's Affidavit of Truth in Support of Motions"); 237 (supplement 3 entitled "Defendant's 2nd Affidavit of Truth in Regards to Affidavit – ECF No. 232").

[6] ECF No. 229.  The government's lax, twenty-line response, which references no evidence and offers no analysis, was nearly useless in resolving this motion.  Fortunately for the government, the meritlessness of Washington's arguments and his failure to meet his burden are plain.

[7] Transcript of Trial Day 1 (testimony of P.Martinez and A. Calvillo); Exhibits 2(a)-(d) (videos and photos of robbery; Exhibits 3(a) & (b) (video and photo); 3(c)-(d) (props including Fed Ex envelopes and label maker); Exhibit 4(b) (zip ties).  Because the official trial transcript has been prepared for only a small portion of the trial to date, I rely in this order on that portion, as well as the rough transcripts and my own copious trial notes; any quoted material comes from the rough transcripts and is referenced by the day/time stamp of the testimony.

[8] Transcript of Trial Day 3 (testimony of Terry Valiente).

**B.     UPS's suspicion gave law enforcement a lucky break.**

The next day, Joshua Washington went to a UPS store in Las Vegas and shipped a box containing some of the stolen goods to himself in Florida. When he arrived at the UPS store in Florida on August 17, 2016, to pick up the package, he was arrested.[9] What Washington did not know when he casually went to retrieve that parcel was that private carrier UPS had opened the package on suspicion that it contained marijuana, discovered instead handfuls of jewelry with the tags still on, contacted law enforcement, and determined that the contents were stolen during the Alfredo's robbery just days before.[10]

Washington was indicted on one count of Hobbs Act Robbery and one count of Transportation of Stolen Goods.[11] The government twice superseded.[12] The ultimate indictment charged both Washington and his co-defendant Fedel Sakers with the robbery and brandishing a firearm in furtherance of a crime of violence under 18 USC § 924(c)(1)(A)(ii), and just Washington with transportation of stolen goods.[13]

**C.     Washington moved to suppress all evidence, arguing that the search of the UPS box was government directed and illegal.**

Throughout this prosecution and the trial, Washington consistently espoused his belief that the search of the package by UPS was actually done by, or at the direction of, law enforcement, making it a warrantless search that violated his Fourth Amendment rights. His federal public defender filed a motion to suppress the derivative evidence,[14] arguing that "the precise sequence of events leading to the search and seizure of the UPS package" was "unclear"

---

[9] Jury Trial 3/6/18 at 9:51 a.m. (testimony of S.A. Mollica).

[10] Transcript of Trial Day 2 (testimony of A. Davis).

[11] ECF No. 11.

[12] ECF Nos. 19, 29.

[13] ECF No. 29 (Second Superseding Criminal Indictment).

[14] ECF No. 54.

and suggesting that the search may have been conducted by UPS investigator Andrew Davis at the direction of the FBI, making him an instrument of law enforcement.[15]

The testimony at the evidentiary hearing dispelled any notion that the search was conducted by or at the direction of law enforcement, however.[16] The government called Davis and Broward County Sheriff Detective Julie Foster, whom Davis showed the contents of the box to after he opened it.[17] Their testimony established a single, consistent sequence of events: Davis, suspecting the package to contain marijuana, opened it alone. No law enforcement officer encouraged him to do so or was aware that he was going to open it before he did so. Only after he opened it and discovered that it contained jewelry did he communicate with Detective Foster, who was in the UPS office, completing paperwork on an unrelated drug parcel that she was retrieving. She did not open any of the contents of the package; she only looked at and examined what Davis showed her.[18]

In a 26-page report and recommendation, Magistrate Judge Leen concluded that Washington failed to show that Davis "acted as a government instrument or agent" or that the Broward County Sheriff Detective Foster "exceeded the scope of [that] . . . private search when she examined the UPS parcel and its contents, or when she photographed the items Davis presented to her."[19] She found the witnesses' testimony "credible and uncontroverted." And because "the Fourth Amendment does not protect against unreasonable intrusions by private individuals," and Washington did not show that Davis "was an instrument or agent of the

_____

[15] ECF No. 54 at 8.

[16] ECF No. 149 (transcript of 12/1/17 evidentiary hearing).

[17] *Id*. at 11–50; ECF No. 135 at 12–16 (R&R).

[18] *See* ECF No. 149 at 11–50.

[19] ECF No. 135 at 24.

4

government" when he opened and searched the package, Magistrate Judge Leen recommended that I deny Washington's motion to suppress.[20]

Washington objected. He maintained that the sequence of events was "not adding up" because "The police came by the UPS Store in Las Vegas asking to speak to the employee who handled the transaction" on Monday, August 15, 2016, yet the Florida UPS driver didn't find the package suspicious and bring it to his inspector's attention until August 16th.[21] Based on this discrepancy, he concluded that law enforcement in Las Vegas had to have been hot on his trail before Davis opened the UPS package in Florida. After carefully evaluating Washington's objection and the suppression-hearing testimony, I found a lack of evidentiary support for it and overruled it, adopted Magistrate Judge Leen's recommendation, and denied Washington's motion to suppress.[22]

**D.      The trial evidence against Washington was overwhelming.**

Washington went through four attorneys before he exercised his right to represent himself.[23] The court appointed attorney Telia Williams, Esq. as Washington's standby counsel, and trial began on February 27, 2018.[24] In his opening statement, Washington all but conceded that he was responsible for the crimes he was charged with. He focused instead on the "discrepancies" in the government's evidence and his belief that the "price range" of the still-missing jewelry was "way . . . out of field."[25]

---

[20] *Id*. at 24–26.

[21] ECF No. 163 at 13.

[22] ECF No. 178.

[23] ECF No. 130 (minutes of 12/28/17 *Faretta* hearing).

[24] ECF No. 137.

[25] ECF No. 265 at 8–9.

Co-defendant Sakers, who pled guilty to the robbery and gun charge without the benefit of a plea agreement,[26] was a reluctant witness for the prosecution at Washington's trial.[27] Though Sakers admitted to his own role in the robbery, despite a guarantee of immunity from further prosecution and threat of contempt, he refused to identify his partner in the crime out of his personal concerns about how "prison politics" would perceive his trial participation.[28] But he did acknowledge that he knew Washington and that they "grew up together."[29]

The evidence that Washington was Sakers's partner in the robbery was massive, however. First, there was the intercepted UPS package of Alfredo's stolen jewelry.[30] The sender listed his name as Joshua Washington.[31] The UPS store employee who processed the box of loot on Sunday, August 14, 2016, Halley Joiner, positively identified Washington as the sender in a photo line-up just days after the package was sent, and she identified Washington as the sender again from the stand. She testified that the package was shipped out on Monday the 15th for delivery on Tuesday the 16th—dates consistent with those provided by Davis, Foster, and the documentary evidence.[32] Joiner identified Government's Exhibit 5a as the box that Washington

---

[26] ECF Nos. 182, 183.

[27] Jury Trial Day 2, 2/28/18 (testimony of F. Sakers).

[28] *Id*. at 9:10–9:18 a.m.

[29] *Id.* at 9:59 a.m.

[30] Ex. 5a.

[31] Ex. 10a.

[32] Jury Trial Day 2, 2/28/18, at 3:26, 3:50, 4:12 p.m.; *see also* Exs. 5(b) (UPS shipping label); 5c.1 (Foster email exchange with LVMPD dated 8/16/16 at 10:54 a.m.); 10(a)-(b) (UPS shipping order dated 8/14/16 and receipt showing shipping on 8/15/16).

shipped. [33] Joiner also confirmed[34] that her customer that day was the same man (and was wearing the same clothes) shown in security video from the Las Vegas airport, which shows Sakers[35] and another man walking through the airport just before their flights.

The addressees that the package was sent to were "David Nolan/J. Washington," and the "sent to" address was Washington's mother's address. [36] Although the package would have been delivered to that address, someone called UPS and arranged to pick it up at the UPS office; Washington was the person who came to claim it.

When Washington was arrested, his cell phone and car were impounded. In the car was another cell phone, his and Sakers's boarding passes for their flights out of Las Vegas,[37] the hat and clothes that Washington was wearing in the airport security video,[38] and the key to a storage locker in Miami.[39] On the cell phones were photos of receipts for a Fed Ex[40] package and a U.S. Postal Service package,[41] both mailed by Washington the day of the robbery, and both delivered

_____

[33] Joiner testified that she opened the box before shipping it because she "got a little suspicious and then when [Washington] came back and did the transaction he left and [she] checked it to make sure it wasn't contraband or bullets or guns or anything like that, opened it." After she determined it wasn't contraband—just another box and some watches—she "[c]losed it. And that was it." *Id*. at 3:31, 4:09 p.m. It was the store policy that she could look in a suspicious package. *Id*. at 3:46, 4:10–4:11 p.m.

[34] *Id*. at 3:27–3:29 p.m.

[35] Sakers admitted that one of the men was him, but he refused to identify the other man. *Id*. at 9:45–9:50 a.m.

[36] Ex. 10a.

[37] Exs. 8c–8g.

[38] Exs. 8j–8k.

[39] Exs. 8l.1–8l.3.

[40] Ex. 19.

[41] Ex 18.

to Washington's mother's home in Florida.[42]  There was also a photo of a piece of Alfredo's stolen jewelry, and the metadata indicated that the photo was taken in Miami on August 15, 2016.[43]  The phone also contained photos of Washington and Sakers all dressed up in their robbery costumes. [44]  The backdrop for those photos appears to be the inside of a storage unit.

The address that Washington provided UPS as the sender's address turned out to be the address of a storage unit in Las Vegas.  That storage unit was rented to Joshua Washington, and his signature on the Occupant Information Form matched the signature on the UPS shipping form for the intercepted box of stolen jewelry.[45]  The storage facility retained a photocopy of Washington's driver's license when he rented the storage unit, confirming his identity.[46]  When law enforcement went to search the unit, they found it in the exact same condition as depicted in the background of the robbery-costume photos of Sakers and Washington.[47]

Washington's defense was not to deny his involvement in the robbery, the brandishing of the gun during it, or his shipping of the stolen goods to himself in Miami.  Instead, his approach was to suggest that law enforcement was not being honest about how and when it discovered his responsibility for these crimes and how much of the jewelry they actually recovered.

UPS investigator Davis and Broward County Sheriff Detective Foster testified at trial.  Their testimony was consistent with their suppression-hearing story.[48]  In response to Washington's attempts on cross-examination to suggest that Foster was actually the one who

---

[42] Exs. 9b & 9c; Jury Trial Day 4, 3/6/18 at 9:39 a.m. (Mollica direct).

[43] Exs. 7, 7a, 7b, 7b.1.

[44] Exs. 7c-7f.

[45] *Compare* Ex. 10a *with* Ex. 11a.

[46] Ex. 11b.

[47] Ex. 11e.

[48] *Compare* Jury Trial Day 2, 2/28/18 *with* ECF No. 149.

opened the box, Davis stated unequivocally, "Detective Foster did not open the package. I opened the package."[49] Both were credible witnesses, and their testimony was corroborated by one another's testimony and was also consistent with and supported by other physical evidence.

**E.     The jury found Washington guilty on all counts after a four-day trial.**

At the close of the government's case, Washington made an oral Rule 29 motion for judgment of acquittal.[50] I denied it, explaining in detail the basis for my ruling on the record,[51] and Washington began to put on his case. He offered just one witness—Maria Chiang-Lopez—and he decided to then rest his case; he did not testify.[52] The jury found him guilty on all three counts.[53]

**F.     Post-trial motions**

Fourteen days after the verdict, Washington filed a "Motion Requesting a Judgment Notwithstanding the Verdict—for a New Trial" under Rule 50 of the Federal Rules of Civil Procedure, which I liberally construe as a motion for judgment of acquittal and for a new trial under Rules 29 and 33 of the Federal Rules of Criminal Procedure.[54] Washington does not challenge the sufficiency of the evidence. He raises only a suppression issue, arguing that the trial testimony of his lone witness Maria Chiang-Lopez proved "that the court should have excluded all derivative evidence obtained during the course of the investigation as a result of the search of the UPS package, was tainted and should be suppressed under the fruit of the

---

[49] Jury Trial Day 2, 2/28/18 at 10:54 a.m.

[50] Jury Trial Day 4, 3/6/18 at 11:07–11:48 a.m. (Rule 29 motion after close of government's case and court's ruling).

[51] *Id*. at 11:37–11:48 a.m.

[52] *Id*. at 1:46–1:49 p.m.

[53] Jury Trial Day 5, 3/7/18 at 9:32 a.m. (video replayed), 1:34 p.m. (verdict). All jurors confirmed upon polling that this was their true verdict.

[54] ECF No. 228. The motion is dated March 21, 2018, though it was received by the court on March 22, 2018.

poisonous tree doctrine, which violated [his] Fourth Amendment rights as the[y] searched and seized the UPS package without a warrant."[55]

**Discussion**

**A.     Washington has demonstrated no basis for a judgment of acquittal or new trial.**

Federal Rule of Criminal Procedure 29(c) allows a district court to "set aside the verdict and enter an acquittal" if "the evidence is insufficient to sustain a conviction."[56]  The "evidence must be taken in the light most favorable to the verdict," and the district court must bear in mind that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts."[57]  The court's "function is to determine whether the jury in arriving at the verdict has acted within the bounds of its authority."[58]

Rule 33 gives trial courts broader authority to vacate a judgment and grant a motion for a new trial "if the interest of justice so requires."[59]  In ruling on a motion for a new trial, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses."[60]

Distilled to its essence, Washington's argument is that Maria Chiang-Lopez's trial testimony undermined the government's entire case.  It proves, he believes, that the court should have suppressed all the evidence of his crimes because the initial search of the UPS package was the illegal, poisonous tree from which all other evidence derived.

---

[55] ECF No. 228 at 2–3.

[56] Fed. R. Crim. P. 29.

[57] *U.S. v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969).

[58] *Id*. at 1242.

[59] Fed. R. Crim. P. 33(a).

[60] *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992).

But Chiang-Lopez's testimony was not remotely as good as it sounded to Washington. He claims that she "testifie[d] that [his] package was intercepted here in Las Vegas by law enforcement, the same day it was shipped out."[61]  She didn't.  Chiang-Lopez testified that she believed that law enforcement came in to talk to her manager about a package with "some stolen goods" at 5:30 "on a Monday but [her] manager was not there."[62]  So he returned "on Tuesday" and talked to the manager.[63]  She said, "We found that weird we thought that he was gonna ask from a package previous weeks normally what they do when someone tried to send like marijuana.  But, not, they came in the next day.  So Sunday and Monday.  And we found it weird that it was like an hour after it was shipped.  But they told us because we asked the driver for UPS and he told us that once it leaves from [the store] it goes at 5:30 to the airport and they can scan stuff and if they find something suspicious then they are allowed" to "call Metro Police at the same time.  But we just have to let the package go like to the destination."[64]

At best, Chiang-Lopez's testimony suggests that Washington's UPS package may have been opened by the UPS driver or one of the employees at the UPS facility at the airport.  It does not support—much less prove—that there was a government search or a government-directed search of the package before it shipped out to Florida.  And when government counsel tested Chiang-Lopez further on what she was told, she admitted that she did not know whether the package had been intercepted:

> Q.      Was this package intercepted?

---

[61] ECF No. 228 at 3.

[62] Jury Trial Day 4, 3/6/18 at 1:27, 1:32 p.m.  On this point her testimony was equivocal—she first stated that "he said that—that there was a package with some stuff in there but he wouldn't tell us what it was."  *Id*. at 1:30 p.m.

[63] *Id*. at 1:33 p.m.

[64] *Id*. at 1:33–1:34 p.m.

A.      I don't know they give I didn't have  . . . that information.[65]

So, Washington has not established a basis for the UPS package or any evidence derived from it to have been excluded from trial.

Even if something that Chiang-Lopez said could suggest that law enforcement searched the UPS package before UPS Inspector Davis opened it in Florida, her testimony deserves little to no weight because all other evidence in this case shows that she was likely wrong about the day.  For this law-enforcement visit to have occurred on Monday August 15th as Chiang-Lopez claims, law enforcement would have had to been brought into the loop before Davis and Foster reported the box of stolen jewelry on August 16th, but:

- Florida FBI Special Agent Matt Lanthorn testified that his office learned about the box of stolen jewelry <u>on August 16th</u> when they got the call from the Florida UPS facility.  He stated that he notified FBI Special Agent James Mollica in Las Vegas.  He expressly said that there was no parallel investigation into Washington that had started before Davis opened the box, and "We all met for the first time that day."[66]

- Agent Mollica confirmed that he was brought into the case when Lanthorn called him <u>on August 16th</u>.  "He said they stopped a package, it was full of jewelry and receipts from Alfredo's Jewelry.  I asked him to hold onto it and I asked him to stop whoever came and tried to pick it up." [67] Nobody in Las Vegas contacted Mollica.[68]

- Las Vegas Metropolitan Police Department (LVMPD) Detective Thomas Ticano, the detective assigned to the robbery after it occurred on the 13th, testified that his involvement in the Joshua Washington part of this investigation started when he received

---

[65] *Id*. at 1:40 p.m.

[66] Jury Trial Day 2, 2/28/18 at 2:23–2:24 p.m. (testimony of M. Lanthorn).

[67] Jury Trial Day 4, 3/6/18 at 9:48–9:49 a.m. (testimony of J. Mollica).  Mollica clarified that the package was "UPS stopped."  *Id*. at 9:49 a.m.

[68] *Id*.

an email communication from a Florida officer who believed "they may have come

across . . . some property that was taken during the robbery."[69]

The inference that the investigators in this case—strangers from three separate law-enforcement

agencies or locations—would testify that they all became keen to Washington's involvement in

the Alfredo's Jewelry store robbery only after Davis opened the package in Florida on August

16th, when law enforcement had actually opened that box an hour after it left the UPS store on

August 15th is not a reasonable inference.[70]

Had the court had the benefit of Chiang-Lopez's testimony during the suppression

hearing, the outcome would have been no different.  The overwhelming, credible evidence

then—and at trial—showed that Washington's involvement in the robbery was unknown to law

enforcement until UPS investigator Davis opened Washington's package in Florida and

discovered handfuls of stolen jewelry and then shared his findings with law enforcement.  He

was not acting as an instrument or agent of the government; Foster was not involved in the

search and did not acquiesce in or encourage it, and her presence at the time of it was merely

incidental; and law enforcement's search did not exceed the scope of Davis's.  Searches like this,

by private parties like UPS, do not violate the Fourth Amendment.[71]  Washington has not shown

that he is entitled to a judgment of acquittal or a new trial, so I deny his motion.

---

[69] Jury Trial Day 1, 2/27/18 at 4:14–4:15 p.m. (testimony of T. Ticano).

[70] The accuracy of Chiang-Lopez's testimony is further weakened by her admission that she "didn't watch the clock" at work.  Jury Trial Day 4, 3/6/18 at 1:42 p.m.

[71] *United States v. Jacobsen*, 466 U.S. 109, 119 (1984) ("The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment."); *United States v. Reed*, 15 F.3d 928, 930–31 (9th Cir. 1994) (citing *United States v. Walter*, 652 F.2d 788, 791 (9th Cir. 1991)).

**B.      The court disregards Washington's late "supplements" and "affidavits."**

Washington followed his motion with a "supplement motion" 23 days after the verdict,[72] and additional supplements 29 days[73] and 53 days[74] after the verdict.  I disregard these supplements because they are untimely new motions with new arguments.  Rule 29(c) requires a motion for judgment of acquittal to be filed "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."[75]  Rule 33 states that "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  Washington's supplemental arguments are untimely, he did not move to enlarge the deadline, and because I see no reason to extend the deadline *sua sponte* under Rule 45(b)(2), I disregard these supplemental arguments.

Even if I were to consider the merits of these late arguments, I would not reach a different conclusion.  Washington argues in his "Supplement Motion"[76] that Annette Anderson, the manager from Storage West in Las Vegas, lied when she testified at trial that law enforcement first came to the storage facility on the afternoon of August 16th asking about his storage unit.  Washington believes, based on information and evidence never admitted at trial, that Anderson secretly assisted law enforcement on August 15th, and her secret assistance "the day before UPS in Florida alerted to the package . . . is evidence that the government not only intercepted the package here in Las Vegas, acquiesced in the search, but actually tried to cover up their time-line investigation details, to make it seem as though Law Enforcement was not aware of Mr.

_____

[72] ECF No. 230.

[73] ECF No. 232 (entitled "Affidavit of Truth in Support of Motions," adds a new argument).

[74] ECF No. 237 (entitled "2nd Affidavit of Truth in Regards to" the affidavit at 232, adds yet another argument).

[75] Fed. R. Crim. P. 29(c)(1).

[76] ECF No. 230.

Washington's package before UPS in Florida alerted to it."[77]  But Anderson appeared to the court to be a credible witness who was not secretly in cahoots with the government, and her trial testimony was both internally consistent[78] and consistent with the testimony by LVMPD Detective Ticano and FBI Special Agent Mollica in Las Vegas about the timeline of the investigation.  In short, Washington had a full opportunity to explore this theory at trial, and it just didn't pan out.  It offers him no basis for post-trial relief.

The theory in Washington's second supplement fares no better.  He argues that discrepancies in the way that the various UPS witnesses described the contents of the UPS package show that some of the contents had been altered between Las Vegas and Florida.  The alteration, he believed, was that one of the smaller boxes inside the large box was sealed when shipped, yet the box still had the unused, plastic adhesive strip on it when it was searched in Florida.  "The Defendant concludes that the description of the package and it's [sic] contents . . . was altered.  The discovery of this information reveals that the package has been changed prior to it arriving in Florida.  Therefor [sic] giving additional reasons to support misconduct which establishes that the government knew of and acquiesced in the warrant-less search, in violation of the Defendant's Fourth Amendment Rights."[79]

Washington's theory that some of the contents of his UPS box had been switched is simply not coherent,[80] and the testimony at both the suppression hearing and the trial failed to

---

[77] *Id*. at 11.

[78] Anderson testified that, although she did not independently recall the date for the first day that she spoke to law enforcement about Washington's storage unit, based on the date that she printed the access log sheet for his unit (which was not admitted into evidence but used only to refresh her recollection), it must have been the afternoon of August 16th.  Jury Trial Day 2, 2/28/18 at 4:33–4:41 p.m.

[79] ECF No. 232 at 14.

[80] Washington voiced this theory many times before and during trial and was consistently unable to articulate a coherent basis for it.  *See*, *e.g.*, ECF No. 149 at 67–73 (suppression hearing transcript).

support it.  But even if one of the smaller boxes had been somehow "switched," that fact would not be probative of whether *law enforcement* engaged in "misconduct" or "knew of or acquiesced in" the search of the box.  So this altered-content theory fails to support any relief.

In his third supplement, Washington argues that law enforcement and the prosecution fabricated emails and photographs to hide the secret that they searched the package before it came into the hands of UPS investigator Davis.[81]  He claims that he "has overwhelming proof that the pictures that was supposedly taken and emails that was sent to the robbery division after the package was open, was both staged and manipulated to appear as if it was taken and sent on August 16, 2016 at the time depicted."[82]  The only "proof" he points to is Exhibit 706(i), which contains an email message from Foster to Special Agent Mollica on 8/16/17—exactly one year after the discovery of the stolen jewelry at the UPS facility in Florida—that reads "Robert Knief requested that I email you the photos I took on 08/16/17 at UPS."[83]  "It is a fact," Washington claims, "that these forwarding emails were altered and pictures was manipulated to fit the story line that government presented to the defendant and to the Courts.  If defendant hearing is granted, the defendant will be able to point out all of the alterations and manipulation of these documents, which will continue to prove Government's misconduct."[84]

The "alteration" that Washington is hinting at was fully developed at trial.  In what he clearly believed was a gotcha moment, Washington pointed out to Foster on cross examination that she emailed the photos of the jewelry to Mollica on August 16, 201**7**, and he suggested that this meant that the pictures had actually been taken an entire year after the government was claiming that the package was opened.[85]  Foster responded that the 2017 reference was merely "a

---

[81] ECF No. 237.

[82] *Id*. at 5.

[83] Ex. 706(i), and reproduced at ECF No. 237 at 6.

[84] ECF No. 237 at 7.

[85] Jury Trial Day 2, 2/28/18 at 12:09–12:11 p.m.

typographical error," easily explained by the fact that she was, coincidentally, resending the pictures on the same date exactly one year after she originally sent them.[86]  She pointed out that the original email she sent to robberyintelligence@lvmpd.com was at the bottom of that re-sent email thread and it was dated "August 16, 201**6** 10:54 AM."[87]

Foster's it-was-a-typo testimony was also consistent with that of (1) FBI Special Agent Lanthorn, who testified that his squad received the call about the package on August 16, 2016,[88] and he went to the UPS location that same day; (2) FBI Special Agent Mollica, who testified that he first learned of this case from Lanthorn on August 16, 2016,[89] and (3) UPS Investigator Davis, who testified that he turned over the box to the FBI on August 16, 2016.[90]  That Foster took those pictures and emailed them to law enforcement in Las Vegas in 2016, not 2017, was also corroborated by UPS Investigator Davis's testimony at trial that he recalled Foster taking photographs in the office at the time he opened the package and that the photographs that Foster took "depict" what he "observed . . . on August 16th of 2016."[91]  So Washington has not shown that evidence at trial was "altered " or "manipulated," entitling him to relief from the jury's three-count guilty verdict.

---

[86] *Id*. at 12:10-12:11 p.m.

[87] *Id*.; Ex. 706(i), reproduced at ECF No. 237 at 6 (emphasis added).

[88] Jury Trial Day 2, 2/28/18 at 1:20 p.m.

[89] Jury Trial Day 4, 3/6/18 at 9:48 a.m.

[90] Jury Trial Day 2, 2/28/18 at 10:36.

[91] *Id*. at 10:32–10:33 a.m., 10:44 a.m.

**C.     Other Motions [ECF Nos. 253, 254, 256, 257, 271, 275]**

After Washington filed his first supplement to his motion for new trial, I ordered the government to respond to it.[92]  The response was late.[93]  Washington asks me to grant his motion for judgment of acquittal or new trial simply because the government's response to his supplement was late.[94]

Washington's supplement was itself a late motion, and I have disregarded it and found that it lacks merit.[95]  No law, rule, or logic supports sanctioning the government for a tardy response to a late and unauthorized supplement by granting the original, meritless motion.  So I deny the Motion for Plaintiff's Failure to Oppose Defendant's Supplemental Motion by the Judge's Court Ordered Time.[96]

Washington's wife has filed a motion seeking an order to have Washington transported to the courthouse so that she can meet with him here and help him prepare for sentencing.  She explains that it is difficult for her to travel to the detention center because she has a special-needs daughter.[97]  Although I empathize with Mrs. Washington's challenges, this is simply not an accommodation that the courthouse is equipped to make for a detainee awaiting sentencing.  I have appointed standby counsel who can assist—and has demonstrated her willingness to assist—the Washingtons with this process.  Mrs. Washington's motion is denied.

Washington asks me to order the Clerk of Court to mail him copies of all documents as they get filed.  I decline to issue a separate order with this direction because the Clerk of Court is already sending Washington copies of documents that the court files in this case; the government

---

[92] ECF No. 244 (minute order).

[93] ECF No. 248.

[94] ECF No. 254.

[95] *See supra* at p. 14.

[96] ECF No. 254.

[97] ECF No. 257.

18

has an obligation to serve on Washington a copy of any document that it files; and as Washington has been repeatedly advised, if he wants a file-stamped copy of something that he files, he must send in an extra copy of any such document along with (and in the same envelope as) his copy for filing, and the file-stamped duplicate will be mailed to him.

Washington also asks a second time for the court to allow him to consult with a psychologist in hopes of getting some mitigating evidence for sentencing.[98] I denied his first request because it was not sufficiently developed.[99] Though Washington has provided more information about what he hopes to accomplish with this evidence, I deny the request for funds for this purpose.

Washington states that wants to use a psychologist to help tell his story and describe his past and childhood experiences.[100] However, he does not identify anything that would suggest to the court that a psychological evaluation would generate mitigating information—particularly anything more than Washington can present by himself and with his own sentencing memorandum and allocution at sentencing.[101] And because Washington has not shown that expending public funds for a psychologist to conduct a psychological evaluation would be anything more than a fishing expedition, I deny his request for expert funds for this purpose.[102] Rule 32(i)(4) of the Federal Rules of Criminal Procedure requires the court to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." It will be during that portion of the sentencing hearing that Washington will have a full opportunity to tell the court his story, and that can include how his past experiences contributed to his character, crimes, or any other factor under 18 U.S.C. § 3553(a).

---

[98] ECF No. 253.

[99] ECF No. 247.

[100] ECF No. 253.

[101] *See* Fed. R. Crim. P. 32(i).

[102] ECF No. 253.

Washington moves for a second continuance of his sentencing hearing to allow him "to continue gathering mitigation information and expert evidence, for effective sentencing objections, arguments and presentation."[103] He does not elaborate on why additional time is required, except to say that he is detained and representing himself. The government opposes his request.[104] Washington also filed a supplemental motion in which he adds that U.S. District Judge Dawson recently granted three sentencing-hearing continuances in an unrelated case and that I should do the same for the same reasons here.[105]

But Judge Dawson's continuances in 2:14-cr-00328 were the result of stipulations, not motions to continue. So, Washington's *opposed* request is not on par. And his conclusory statement that he needs more time to gather mitigating information and prepare objections does not persuade me to grant a second continuance. I already extended Washington's time to prepare for his sentencing by two months for those reasons.[106] Washington does not identify any specific acts that he needs to perform or explain why he was unable to complete them in the extra two months he already got. Nor does he describe information that he has sought but not yet been

---

[103] ECF No. 271.

[104] ECF No. 273.

[105] *Id.*

[106] ECF No. 241.

20

provided, or stated when he anticipates receiving it.[107]  Accordingly, I find that Washington has not shown good cause to continue his sentencing hearing a second time, and I deny his motion.[108]

Finally, Washington asks for a status hearing before sentencing "in light of pending motions."[109]  Because I have resolved all other pending motions[110] by this order, I do not find a status hearing necessary, so I deny the request for a status check.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that:

- The Motion Requesting a Judgment Notwithstanding the Verdict—for a New Trial **[ECF No. 228] is DENIED**;

- The Ex Parte Emergency Motion for Psychologist Consultant Expert for Mitigating Sentencing Arguments **[ECF No. 253] is DENIED**;

- The Motion for Plaintiff's Failure to Oppose Defendant's Supplemental Motion by the Judge's Court Ordered Time **[ECF No. 254] is DENIED**;

- The Motion Requesting the Court to Order the Clerk of Court to Mail a Copy of Filings **[ECF No. 256] is DENIED**;

- Kara Washington's request to transport Washington for meetings **[ECF No. 257] is DENIED**;

---

[107] In his reply brief, Washington elaborates on the information he has sought and not yet obtained.  ECF No. 274.  However, this court will not consider arguments raised for the first time in reply briefs because the practice of using a motion as merely a placeholder and then loading up the reply brief with the real information eliminates the opposing party's ability to provide a meaningful response and does not promote justice.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  Washington is cautioned that he needs to put all of his arguments and information in his motions (not in unauthorized supplements or reply briefs) if he wants the court to properly consider them.

[108] ECF No. 271.

[109] ECF No. 275.

[110] Save for the motion for reconsideration pending before Magistrate Judge Leen.  *See* ECF No.250.

- The Motion for a Status Check **[ECF No. 275] is DENIED**; and
- The Motion to Continue Sentencing **[ECF No. 271] is DENIED**. **The Sentencing Hearing will proceed as scheduled on August 13th.**

Dated: August 7, 2018

_____
U.S. District Judge Jennifer A. Dorsey